**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**BRIAN THOMPSON** *et al.*                                                                  **PLAINTIFFS**

**v.**                                                          **CIVIL ACTION NO. 1:01-CV-111-LG-RHW**

**NORTHROP GRUMMAN SHIP SYSTEMS, INC.**                              **DEFENDANT**

**REBUTTAL MEMORANDUM OF AUTHORITIES IN SUPPORT OF MOTION TO
COMPEL FURTHER RESPONSES TO PLAINTIFFS' FIRST SET OF
<u>INTERROGATORIES AND REQUESTS FOR PRODUCTION</u>**

**ARGUMENT**

Defendant's Response to this motion (docket no. 178) ("Def.'s Resp.") exhibits a profound misunderstanding of the parameters of discovery allowed plaintiffs in employment discrimination cases with regard to Rules 26-34 of the Federal Rules of Civil Procedure, long-established United States Supreme Court and Fifth Circuit authority, and the adversary system. Relying on defendants' long dishonored cry of "fishing expedition," as well as unsupported claims of overbreadth and burdensomeness, Defendant Northrop Grumman Ship Systems ("Defendant") seeks to limit the discovery to which Plaintiffs are entitled.

To begin, the confusing presentation by Defendant with regard to class discovery versus individual discovery lacks any anchor in reality. First, no order issued by this Court limits discovery to class issues. Second, the relevant authorities establish just the opposite. Perhaps even more disconcerting is the fact that Defendant objected to 37 of Plaintiffs' interrogatories and 40 of Plaintiffs' document requests because, in Defendant's opinion, they seek information related to a putative class. However, at the same time, Defendant claims that discovery should be limited to class issues.

The ubiquitous burdensomeness and relevancy objections asserted by the Defendant are likewise specious. As informed by relevant case law, Plaintiffs are allowed expansive discovery, particularly with regard to class allegations, and when Defendant has raised affirmative defenses such as misjoinder of [unidentified] parties, *see* Answer at 2 (filed May 22, 03) (docket no. 51), that others are responsible for Plaintiffs' injuries, *see id.* at 3, and that it "exercised reasonable care to prevent and correct promptly any racially harassing behavior, and the plaintiffs unreasonably failed to take advantage of the preventive or corrective opportunities provided by

Northrop Grumman, or to avoid harm otherwise." *See id*. at 3.[1]  Furthermore, the rather disingenuous claims of vagueness that have been imposed by Defendant fail to justify its refusal to provide the requested information on at least three grounds, as described herein.

Moreover, and most problematically, Defendant continues to extol, at a minimum, form over substance with its constant wail that it has *produced* the requested documents or has promised to do so.[2]  Indeed, the Defendant's continued attempt to place its non-production of certain documents to which it entered no objection on this basis, on the fact that Plaintiffs did not acquiesce to the presented protective order certainly shows again a profound misunderstanding of the Federal Rules and the adversarial process.  Plaintiffs are and were under no duty to accept the proffered protective order, especially since it contained many objectionable components.[3]  However, in the spirit of cooperation, Plaintiffs proffered a significantly more equitable protective order that seemingly was not even considered by Defendant.[4]  Further, Defendant did not follow the appropriate procedures to have a protective order entered, and it then summarily spurned Plaintiffs' suggested order and waited over a month before it begrudgingly sought an Order from this Court.  Thus, the Defendant has invented improper limitations to Plaintiffs' legitimate discovery and seeks ratification of these judicial and procedural inventions by faulting Plaintiffs.  In light of Defendant's specious objections and its attempts to defend them, Plaintiffs' Motion to Compel must be granted for all of the reasons identified below.

I. **PLAINTIFFS' DISCOVERY REQUESTS ARE TARGETED TO THE SHOWING THEY MUST MAKE TO MEET CLASS CERTIFICATION REQUIREMENTS UNDER RULE 23.**

In its response to Plaintiffs' motion to compel, Defendant cites recent Fifth

---

[1] Similarly with regard to Defendant's objections regarding its corporate status, its answer is styled in a manner that it *qua* Northrop Grumman Ship Systems, Inc., is suddenly the Defendant.  However, nowhere in any of its pleadings does it indicate how it came to be the Defendant in this matter.  Indeed, it simply filed a document that was styled Notice of Name Change of Ingalls Shipbuilding , Inc. to Northrop Grumman Ship Systems, Inc. (docket No. 31), and ominously for Plaintiffs, the First Affirmative Defense reads as follows:  "the Complaint fails to state a claim against Northrop Grumman upon which relief may be granted." (docket No. 51).

[2] Again, one is forced to consider the old saw of "believe none of what you hear and only half of what you see," most recently immortalized in "I Heard Through Grape Vine" by the Late Marvin Gaye Disc. 3, Soul Spectacular! (WQED Pittsburgh, PA and Rhino Entertainment Co. 2002).  Again, in this situation, Plaintiffs have seen nothing in response to these promises.  *See also* Part VII *infra*.

[3] *See* Plaintiffs' Memorandum in Opposition to Defendant's Motion for Entry of Protective Order (filed Jan. 20, 2005) (docket no. 106).

[4] Moreover, Defendant unabashedly first ignored the unambiguous procedural requirements contained in Rule 26(c) of the Federal Rules of Civil Procedure, as well as Local Rule 7.2 (D) for seeking entry of a protective order, and then, apparently under judicial compunction, failed to provide even the most rudimentary justification for the requested order.  *See* docket nos. 94 and 106.

Circuit precedent reiterating the "rigorous" standard plaintiffs must meet to certify the alleged subclasses, *see Unger v. Amedisys*, 401 F.3d 316, 320 (5th Cir. 2005), and directing this Court to "take a 'close look' at the parties' claims and evidence in making its Rule 23 decision . . . to 'find,' not merely assume, the facts favoring class certification." *Id.* at 321.  Yet Defendant has for over *ten months* knowingly withheld basic information regarding its workplace policies and demographics that Plaintiffs will need to prove to this Court that discrimination is Defendant's standard operating procedure, and that classwide treatment is therefore appropriate.

Instead, in what may be a deliberate effort to mislead the Court as to whether Plaintiffs' requested discovery is appropriate, Defendant persists in attacking the viability of Plaintiffs' claims and the relevance of Plaintiffs' requests, and in making all-but-unsubstantiated assertions that responding to Plaintiffs' requests would work unprecedented, operations-crippling burdens on Defendant's staff and its counsel.  In so doing, Defendant ignores its duty under the Federal Rules, even if some portion of Plaintiffs' requests were at all objectionable—which they are not—to produce the nonobjectionable discovery.  Fed. R. Civ. P. 34(b).  Defendant's months-long defiance of its discovery duties must not be rewarded with a reprieve by this Court.

### A. Plaintiffs' Requests Target Information Relevant to Rule 23 Requirements.

As Defendant acknowledges, Plaintiffs' class certification-related discovery should be "relevant to the issue of class certification or one of its prerequisites:  numerosity, commonality, typicality, and adequacy of representation."  Def.'s Resp. at 4 (citing Fed. R. Civ. P. 23). Plaintiffs agree that they must develop evidence showing, generally, "the existence of a class of persons who have suffered the same injury as [the named Plaintiffs], such that [their claims] and the class claims will share common questions of law or fact and that [their claims] will be typical of the class claims. *Gen. Tel. Co. of S.W.  v. Falcon*, 457 U.S. 147, 157 (1982).

As Plaintiffs demonstrated in their motion to compel discovery and supporting memorandum of authorities, each of its discovery requests has been carefully designed to elicit information relevant to making its Rule 23 showing.  To the extent that the plain language of each of the requests does not immediately persuade Defendant or the Court that this is the case, Plaintiffs' moving papers explain in detail how each request seeks evidence of long-established relevance to the Court's certification determination:  Defendant's workplace policies and practices; their statistical effects on Plaintiffs; and anecdotal evidence of specific instances of discrimination.  Pls.' Mem. at 3-6 & nn.8, 10.  *See generally Int'l Bhd. of Teamsters v. U.S.*, 431

U.S. 324 (1977); *Hazelwood Sch. Dist. v. U.S.*, 433 U.S. 299 (1977).

Defendant, perhaps disingenuously, disputes the relevance of specific interrogatories and document requests. Def.'s Resp. at 3, 6. But these arguments, if sincere, belie a misunderstanding of the Federal Rules' standards for discoverable evidence. *See* Fed. R. Civ. P. 26(b). Document Request No. 7, for example, which seeks documents constituting or summarizing contracts, is a request for information clearly relevant to the class certification question, since such contracts may contain indicia of Defendant's employment policies or practices that may affect both the named Plaintiffs and the absent class members. Similarly, documents relating to the merger between Defendant's parent, Northrop Grumman Corporation ("NGC") and Litton Industries, sought in Document Request No. 5, are relevant to determining the existence of such company-wide policies, and the identity of those persons responsible for creating or implementing such policies.

Defendant specially complains about Plaintiffs' requests designed to elicit statistical data, although it acknowledges that statistical evidence is relevant to their Rule 23 showing. Def.'s Resp. at 8-9; *see also Harris v. Marsh*, 100 F.R.D. 315, 324 (E.D.N.C. 1983). Plaintiffs agree, and have demonstrated in their moving papers that their interrogatories and document requests are designed to elicit demographic information from which statistical evidence of classwide discriminatory policies and practices can be developed. Plaintiffs' Memorandum in Support of Motion to Compel at 5-6 & n.10. (filed Mar. 15, 2005) (docket no. 140). Indeed, cases cited by Defendant confirm that discovery of data from which proper statistical evidence can be adduced is crucial to the success of Plaintiffs' class claims. *See Anderson v. Douglas & Lomason Co.*, 26 F.3d 1277, 1292 (5th Cir. 1994) (denying class certification motion because plaintiffs submitted unconvincing statistical evidence); *Jackson v. Univ. of Tex.*, 172 F. Supp.2d 860, 880 (S.D. Tex. 2001) (same); *Harris*, 100 F.R.D. at 322 ("[A]necdotal evidence presented could . . . serve to "buttress" significant statistical evidence . . . but does not, standing alone, suffice to demonstrate that . . . numerosity and typicality factors have been met.").[5] Additionally, "clearly the type of statistical evidence that [plaintiffs] sought through the discovery order was relevant to [their] individual case[s]." *Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588, 592 (5th Cir. 1978)

---

[5] *EEOC v. Olson's Dairy Queens, Inc.*, 989 F.2d 165 (5th Cir. 1993), also supports Plaintiffs' requests for data for development of statistical evidence, on the grounds that courts demand a convincing showing of statistical disparities between plaintiff classes and similarly situated persons, although not for the reason Defendant states: in this case, the Fifth Circuit actually reversed the trial court's holding that the EEOC's statistical evidence did not support its pattern-or-practice claims. *Id.* at 167-69; *see also* Pls.' Mem. at 6 & n.11.

(citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *see also Duke v. Univ. of Tex. at El Paso*, 729 F.2d 994, 997 (5th Cir. 1994); *Simpson v. Specialty Retail Concepts, Inc.*, 121 F.R.D. 261, 263 (M.D.N.C. 1988). For all these reasons Plaintiffs' requests for demographic data are appropriate.[6]

### B. Plaintiffs' Requests Target Information Relating to Their Individual Claims When Such Information Is Relevant to Rule 23 Class Certification Discovery.

Defendant also persists in criticizing Plaintiffs' discovery requests as somehow inappropriate because they seek information relevant to both class certification and to individual liability claims. Def.'s Resp. at 5, 8. But recent Fifth Circuit precedent, cited by Defendant, expressly acknowledges that, in making the Rule 23 certification determination, the court "'must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues.'" *Unger*, 401 F.3d at 321.[7] Discovery into facts supporting Plaintiffs' individual claims is important in its own right, and so that the Court may make informed decisions regarding Rule 23's typicality, commonality, and adequacy requirements. Other, older Fifth Circuit cases, binding on this Court despite Defendant's invitation to disregard them, direct that the scope of allowable discovery in Title VII class action litigation be broad, since information supporting individual liability is "relevant to the private attorney-general, either in his individual role or in his capacity as the claimed representative of a class." *Trevino v. Celanese Corp.*, 701 F.2d 397, 406 (5th Cir. 1983) (citing *Burns v. Thiokol Chemical Corp.*, 483 F.2d 300, 305 (5th Cir. 1973)); *see also Burns*, 483 F.2d at 305 (approving discovery into companywide policies and demographics for use in pattern-or-practice litigation).[8]

In their motion to compel and supporting memorandum, Plaintiffs have thoroughly substantiated the propriety of each of their document requests and interrogatories, both as Rule 23 discovery and as valid discovery relating to Plaintiffs' individual claims. *See*, *e.g.*, Pls.'

---

[6] Additionally, responses to Plaintiffs' requests *must* include information regarding all similarly situated employees, not just the named Plaintiffs. *See* Pls.' Mem. at 6 & n.11. Defendant's responses to date give no indication that it will comply with the requests for relevant, necessary *companywide* information, unless under Court order to do so.

[7] *See also Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 366 (4th Cir. 2004) (stating that, "'[b]efore deciding whether to allow a case to proceed as a class action . . . a judge should make whatever factual and legal inquiries are necessary under Rule 23 . . . And if some of the considerations under Rule 23(b)(3) . . . overlap the merits . . . then the judge must make a preliminary inquiry into the merits'" (quoting *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 675-76 (7th Cir. 2001))).

[8] *Mayo v. Hartford Life Ins. Co.*, 214 F.R.D. 465 (S.D. Tex 2002), is quoted accurately by Defendant, but its citation here is misleading, in that the court in that case was far more concerned with discovery by Plaintiffs regarding the existence of a *defendant* class, not the plaintiff class. *See id.* at 470-71 (expressing skepticism regarding "the legal viability of a plaintiff class suing a defendant class").

Mem. at 6-8.[9]

## II. DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION DOES NOT DISAVOW ITS NUMEROUS, UNDIFFERENTIATED OVERBREATH AND BURDENSOMENESS OBJECTIONS.

Defendant persists in complaining that Plaintiffs' discovery requests are overbroad, and that, as such, would be unduly burdensome to answer. Def.'s Resp. at 10-13.

Plaintiffs' motion to compel and supporting memoranda, including Part I *supra*, explain why each of its interrogatories and document requests are designed to elicit precisely relevant data necessary to making its Rule 23 showing. Further, although Defendant's response to Plaintiffs' motion to compel provides minimal, heretofore unprofessed explanations for why each of Plaintiffs' requests are overbroad, *not one* of its individual explanations for why it cannot reply adequately to individual interrogatories or document requests disavows the boilerplate objections it made in its formal discovery responses. As Plaintiffs have explained, federal case law is replete with examples of courts refusing to consider boilerplate objections to discovery. *See* Pls.' Mem. at 8-9; *see also Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986) (holding that it is not sufficient to merely state a generalized objection, but, rather, objecting party must demonstrate that a particularized harm is likely to occur if the discovery be had by the party seeking it); *St. Paul Reinsurance Co. v. Commercial Financial Corp.*, 198 F.R.D. 508 (N.D. Ia. 2000) (same and collecting cases); *Chubb Integrated Sys. Ltd. v. Nat'l Bank of Washington*, 103 F.R.D. 52, 58 (D.D.C. 1984) ("General objections are not useful to the court ruling on a discovery motion. Nor does a general objection fulfill [a party's] burden to explain its objections.").

These boilerplate objections, combined with whatever individualized responses or

---

[9] Defendant references the fact that the EEOC did not issue a cause determination with regard to Plaintiffs' promotions claims, and suggests that this Court should therefore extrapolate that Plaintiffs' requests for promotional information and statistics are impermissible fishing expeditions. However, *McDonnell Douglas Corp. v. Greene*, 411 U.S. 792, 798 (1973) establishes that the fact that the EEOC did not issue a cause determination does not preclude Plaintiffs from obtaining discovery on the matter. Moreover, the EEOC determination contains a statistical analysis, the genesis of which is unclear, and which may be legally deficient under *Hazelwood School District v. U.S.*, 433 U.S. 299, 308 (1977) (a proper comparison is between the racial composition of employees and the racial composition of the qualified population in the relevant labor market). In this instance, the relevant labor market is the employee population at the shipyard. *See, e.g., Kirkland v. N.Y. Dep't of Corr. Servs.*, 520 F.2d 420, 423-26 (2d Cir. 1975), *cert. denied*, 429 U.S. 823 (1976); *Wheeler v. Armco Steel Corp.*, 471 F.Supp. 1050, 1053 (S.D. Tex. 1979); *EEOC v. EI du Pont de Nemours & Co.*, 445 F.Supp. 223. 235 (D. Del. 1978). Moreover, the EEOC *did* issue a cause determination with regard to the class-wide hostile work environment claim. *See* Supp. McNeill Decl. ¶ 17, Exh. B; *see also infra* Part VI.

explanations it offers for its noncompliance, result in an unacceptably ambiguous discharge of Defendant's discovery duties, "since it cannot be determined whether [Defendant] has supplied a full and complete answer in spite of the objection, or a partial or incomplete answer in reliance upon the objection." *Burton Mechanical Contractors, Inc. v. Foreman*, 148 F.R.D. 230 (N.D. Ind. 1992). For example, in response to Plaintiffs' Interrogatory No. 38, which seeks basic demographic data, including racial classification data, about any preferences Defendant or its predecessor Ingalls Shipbuilding may have shown to current employees in filling certain jobs, Defendant answers:

> See objections 2 ["not reasonably calculated to lead to the discovery of admissible evidence"], 3 ["this request/interrogatory . . . is overly broad and . . . compliance with it would be unduly burdensome"], and 4 ["this request/interrogatory . . . seeks information and documents relating to the merits of the claims of a putative class that has not been certified"]. Without waiving these objections, NGSS responds that, all else being equal, it does give preference to qualified current employees over others. NGSS has never had a policy that gives preference to applicants for jobs based on their race.

This nonresponsive response, which comes nowhere close to providing what may well be readily retrievable human resources data about employees considered for internal promotions, leaves Plaintiffs (and the Court) unable to make a reasoned determination about whether Defendant has done all it should to provide Plaintiffs with highly relevant responsive information.

In its defense of its answer to Interrogatory No. 38, Defendant states, as it does so often throughout its response, that answering the interrogatory is burdensome because would take "thousands" of hours to complete. Def.'s Resp. at 56; *see id.* at 2 ("[t]housands of hours" required to respond to plaintiffs' discovery); 12 ("thousands of hours and millions of dollars" required to fulfill discovery duties). These bald, undifferentiated assertions made in response to most of Plaintiffs' requests echo the similarly unsupported statement made in the Shaw Declaration. Shaw Decl. at 2 (responding to Plaintiffs' discovery "would necessitate thousands of man-hours and would take months to complete"). But the Fifth Circuit has made it clear, in non-discovery contexts, that hollow, self-serving assertions made without factual support are no more convincing simply because they appear in affidavit form. *See*, *e.g.*, *American Heritage Life Ins. Co. v. Orr*, 295 F.3d 702, 710 (5th Cir. 2002) (stating that "affidavits proffered by Appellants . . . amount to nothing more than hollow, bald assertions" that do not support fraud claims); *Bhatia v. John*son, 818 F.2d 418, 421-22 (5th Cir. 1987) (same).

As Plaintiffs stated in their motion to compel, under the Federal Rules Defendant must make specific factual showings as to why any of Plaintiffs' interrogatories or document requests are overbroad or unduly burdensome to answer adequately. *See Martin v. Easton Pub. Co.*, 85 F.R.D. 312, 315 (E.D. Pa. 1980) ("To resist answering interrogatories, a party cannot invoke defense of oppressiveness or unfair burden without detailing nature and extent thereof; simply decrying expense to the party will not satisfy such obligation; rather, party must show specifically how each interrogatory is burdensome or oppressive."). Further, Defendant must respond adequately, by producing documents or otherwise providing relevant information, to any non-objectionable portion of Plaintiffs' discovery.[10] Defendant has done neither of these, and its months-long disregard of its mandated discovery duties now requires diligent Court oversight and, if necessary, sanction.[11]

---

[10] Among the "fishing expedition" cases Defendant insists on citing, despite the Supreme Court's longstanding admonishment to avoid such arguments against participation in discovery, *see Hickman v. Taylor*, 329 U.S. 495, 507 (1947), both *Addison v. Allstate Ins. Co.*, 97 F. Supp.2d 771 (S.D. Miss. 2000) and *Christman v. Allstate Ins. Co.*, 82 F. Supp.2d 612 (S.D. Miss. 2000) are distinguishable because they involve plaintiffs seeking a continuance of the discovery deadlines to conduct *further* discovery after a negative summary judgment ruling, a procedural posture and evidentiary standard far different from the present case, where Plaintiffs are attempting to procure Rule 23-related discovery during the court-mandated time for doing so. *See Addison*, 97 F. Supp.2d at 774-775; *Christman*, 82 F. Supp.2d at 614. *Micro Motion, Inc. v. Kane Steele Co.*, 894 F.2d 1318 (Fed Cir. 1990), is similarly inapposite in that it addresses the court's concern regarding the burden of discovery on a non-party facing a Rule 45 subpoena, not on the discovery duties of parties to each other. Finally, Plaintiffs take umbrage at Defendant's citation to *Russell v. Choicepoint Servs., Inc.*, 302 F. Supp.2d 654, 671 (E.D. La. 2004), and can assure the Court they "reasonably believe[]" all of the claims contained in the Second Amended Complaint to be "viable."

[11] Similarly, Defendant's vagueness objections are not well-taken. Such an objection may be supported only if the responding party can show that the interrogatories contain terms that are: (1) indefinite, *see Heritage Furniture, Inc. v. Am. Heritage, Inc.*, 28 F.R.D. 319, 320 (D. Conn. 1961); and (2) relative or subjective in nature. *See Struthers Scientific & Int'l Corp. v. Gen. Foods Corp.*, 45 F.R.D. 375, 379 (S.D. Tex 1968) (flavor loss subjective); *Savannah Theatre Co. v. Lukas & Jenkins*, 10 F.R.D. 461, 463 (D. Ga. 1943) (competitive relative term). One can always present qualified or restricted answers as necessary due to any uncertainty. *Struthers Scientific*, 45 F.R.D. at 379. Rather general interrogatory language has been permitted as long as the interrogatory gives the other party a reasonably indication of the information to be included in its answer. *See* 8A C. Wright, A. Miller & R. Markus *Federal Practice and Procedure: Civil 2d* § 2168 at 252 (1994). If a party to whom the interrogatory is addressed believes that there is uncertainty in the meaning of the interrogatory, it may qualify its answer if need be. *Id.* Indeed, only rarely is it held that an interrogatory is so unclear that the other party cannot reasonably be required to answer it. *Id.*

With regard to requests for production, the goal is similarly that the designation be sufficient to apprise a person of ordinary intelligence what documents are required and the court to be able to ascertain whether the requested documents have been produced. *See* 8A C. Wright, A. Miller and R. Markus, *Federal Practice and Procedure: Civil 2d* § 2211 at 415. Here, Defendant has not established that it meets these prerequisites. Moreover, it has never sought any clarification as to these allegedly vague and ambiguous discovery requests. *See* D. Hittner, *Federal Civil Procedure Before Trial,* Fifth Circuit Edition ¶ 11.1735 at 11-187 (The Rutter Group 2003) (where the ambiguity can easily be resolved by conferring with the propounding party, courts are likely to overrule an objection that the discovery request is vague and ambiguous); *see also Beach v. City of Olathe*, 203 F.R.D. 489, 497 (D. Kan. 2001). Indeed, the majority of Defendant's complaints in this regard were presented for the *first time* in its Response. As such, there is no basis to find that this objection is well taken. *See* Interrogatory Response Nos. 13, 15, 17, 28, 29, 33, 34, 40, 49; Document Requests 1, 2.

**III.   PLAINTIFFS ARE ENTITLED TO REQUESTED ELECTRONIC DISCOVERY.**

Defendant compounds its mistaken use of unsubstantiated burdensome objections to justify discovery noncompliance when it refuses Plaintiffs' requests for electronic data on such grounds, among others. *See* Def.'s Resp. at 97 (in defending its boilerplate objections to document request no. 46, seeking computerized employee data, stating that "[t]he request is overly broad, burdensome, and seeks documents which are irrelevant"). Indeed, elsewhere in its Response to the motion to compel, Defendant either mistakes its discovery duty, or attempts to mislead the Court, by refusing to provide any electronic data at all. *Id.* at 70 ("NGSS *has no obligation* to produce any documents in machine-readable or electronic format." (emphasis added)).

As other courts have recognized over the decades, electronically stored information is subject to all of the disclosure requirements of the Federal Rules, including discovery by a Rule 34 document production request. *See, e.g., Thompson v. United States Dep't of Housing and Urban Development*, 219 F.R.D. 93, 96 (D. Md. 2003) (collecting cases); *Rowe Entm't Inc. v. William Morris Agency, Inc.*, 205 F.R.D. 421, 428 (S.D.N.Y. 2002) ("Electronic documents are no less subject to disclosure than paper records."); *Bills v. Kennicott Corp.*, 108 F.R.D. 459, 461 (D. Utah 1985); *cf.* Advisory Committee Note, Fed. R. Civ. P. 34 ("Rule 34 applies to electronic data compilations."). If Defendant possesses responsive data maintained electronically, it must produce such data in its electronic format. *See, e.g., In re Plastics Additives Antitrust Litig.*, No. Civ. A. 03-2038, 2004 WL 2743591, *15 (E.D. Pa. Nov. 29, 2004) (requiring parties to produce data in electronic format); *In re Verisign, Inc., Securities Litig.*, No. C 02-02270 JW, 2004 WL 2445243, *2 (N.D. Cal. Mar. 10, 2004) (reviewing note to Rule 34 and holding that "requiring the production of documents in electronic format is not contrary to law. . . . [but] is well supported by the Federal Rules"); *Anti-Monopoly, Inc. v. Hasbro, Inc.*, No. 94CIV.2120 (LMM) (AJP), 1995 WL 649934, *2 (S.D.N.Y. Nov. 3, 1995) ("[T]he rule is clear: production of information in 'hard copy' documentary form does not preclude a party from receiving that same information in computerized/electronic form.").

Further, such electronic production should generally be cheaper, and therefore less burdensome, then production of paper records. *See, e.g., Pamlab, L.L.C. v. Rite Aid Corp.*, No. Civ. A. 04-1115, 2004 WL 2358106, *3 (E.D. La. Oct. 13, 2004) (rejecting burdensomeness

REBUTTAL MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL                                        9
CIVIL ACTION NO:  1:01CV-111-LG-RHW

objections to discovery where responsive information was available on defendant's computer system); *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 318 (S.D.N.Y. 2003) ("Electronic evidence is frequently cheaper and easier to produce than paper evidence because it can be searched automatically, key words can be run for privilege checks, and the production can be made in electronic form obviating the need for mass photocopying.").

For these reasons, Plaintiffs renew, yet again, their requests for electronic data in the electronic format in which it is maintained by Defendant, as well as other discovery relevant to determining the extent to which Defendant maintains data electronically.[12]

## IV. DEFENDANT HAS ONCE AGAIN FAILED TO ELUCIDATE HOW PLAINTIFFS' DISCOVERY REQUIRES THE DISCLOSURE OF CONFIDENTIAL, PROPRIETARY BUSINESS AND PRIVATE MEDICAL INFORMATION.

Despite Plaintiffs' recitation of the law articulating the parameters of confidentiality, medical privacy and proprietary business information, *see* Pls.' Mem. at 9-15, Defendant adamantly refuses to describe *how* Plaintiffs' discovery falls within the purview of these objections.[13] *See* Fed. R. Civ. P. 33(b)(4) ("All grounds for an objection to an interrogatory shall be stated with specificity."); *see also* Fed. R. Civ. P. 34(b) (If a responding party is objecting to only part of the request, "that part shall be specified."). Defendant bears the burden of showing how Plaintiffs' discovery warrants the stated objection, and Defendant has failed miserably at indicating which part of any interrogatory or request, if any, implicates confidential/proprietary business or private medical information. It is simply ludicrous, and a waste of precious judicial resources, for Defendant to expect Plaintiffs' counsel and the Court to scrutinize each interrogatory and request to justify Defendant's assertion of imprecise and specious objections. Nevertheless Plaintiffs' counsel has scrutinized this discovery and has concluded that Defendant's objections are without merit, grounded neither in law nor fact.

Hoping that a cogent analysis of the applicable law might persuade Defendant to withdraw its baseless objections or at least induce it to read the relevant case law, the Court and

---

[12] *See, e.g.*, Document Request Nos. 1, 4, 14, 46, 47, 48, 49, and 52.

[13] Defendant objects to Plaintiffs' discovery "on the ground that it seeks information and/or documents that contain confidential information about employees other than the named plaintiffs and/or confidential and proprietary business information. NGSS will provide such information and produce such documents only upon execution of a mutually agreeable Protective Order. A draft of such an order has been provided to plaintiffs' counsel." Defendant's Objection Number 5 ("confidentiality/business propriety" objection.). Defendant further objects to Plaintiffs' discovery "on the ground that it seeks information and/or documents that can only be provided upon execution of an appropriate medical release." Defendant's Objection Number 6 ("medical release" objection).

Plaintiffs are once again burdened with divining Defendant's basis for asserting these inapplicable and imprecise objections. In its Response, Defendant has also failed to address many, if not most of Plaintiffs' legal arguments. Oddly, Defendant appears to chastise Plaintiffs for providing the Court with a nuanced definition of the scope of proprietary business information. *See* Def.'s Resp. at 13 ("The plaintiffs define 'proprietary' business information to include only 'trade secrets.'"). Defendant misrepresents Plaintiffs' argument; Plaintiffs never used the word "only" as Defendant states in providing the Court with the definition of proprietary information. Indeed, it is Plaintiffs – not Defendant – who have cited this legal authority in an effort to show how their discovery does not fall within the purview of "technical information," "conventional (i.e. non-patentable techniques)", "financial information," and "sensitive and proprietary Department of Defense financial information." *Id.*

Unable to offer *any* explanation of its blanket assertion that "[m]uch proprietary information would be released if Defendant were required to respond fully to all of the plaintiffs' discovery requests without the benefit of a protective order," Def.'s Resp. at 13, Defendant merely reiterates Plaintiffs' recitation of the law found in footnote 23 of their brief, apparently because it is unable to rebut it. Despite its assertions, Defendant misses the point: there is nothing proprietary, confidential or private – in the broadest sense of these terms – about its personnel policies and practices or the underlying allegations of discrimination and harassment that are at the heart of this case.

Moreover, Defendant has exacerbated this situation by withholding actual production of documents and requiring the execution of a protective order which is fraught with serious procedural and substantive defects. Conditioning production and copying, not just inspection, of relevant, non-privileged documents upon execution of a seriously deficient protective order has done nothing other than to unduly delay these discovery proceedings as well as the entire disposition of this case. This Court should not countenance such obstructionist behavior.

    **A.**    **There is no Justification for Failing to Respond to Plaintiffs' Discovery Based on Confidential/Proprietary Business Information or Medical Privacy.**

        **1.**    **Plaintiffs' Discovery Requests are Narrowly Tailored and do not Implicate Confidential or Proprietary Business Information.**

This compound, multi-faceted objection was interposed to *twelve* of the interrogatories and *twenty-five* document requests propounded by Plaintiffs. For example, Plaintiffs seek

information commonly requested in employment discrimination cases such as organizational charts, evidence of discriminatory conduct, applicant information, internal and governmental complaints of discrimination, and identifying information of those individuals involved in promotion, demotion and discipline. The nature of these interrogatories[14] and document requests[15] reflect their relevance to this case, and they are specifically set forth for the Court's convenience.

Having closely reviewed these discovery requests, there is simply no legal basis for Defendant's assertion of confidential/proprietary business information. Viewed in context, Defendant makes this unwarranted objection to bolster its erroneous contention that it is not required to produce class-wide and comparative discovery. Attempting to cloak this in the guise of confidential and private information, Defendant adds yet another layer of burdensome and specious objections with which this Court and Plaintiffs must grapple, but ultimately fails to carry its burden.

### 2. Plaintiffs' Discovery Requests are Narrowly Tailored and do not Implicate Private Medical Information.

Defendant objected to Document Request Nos. 40 and 46, citing medical privacy necessitating the execution of a medical release. As with its others responses, Defendant failed to cite any legal authority for requiring Plaintiffs to execute a release for their own medical records and workers' compensation files which are the subject of Request No. 40 when these Plaintiffs have retained the undersigned as counsel of record who, by definition, as their counsel are entitled to obtain them. *See* Def.'s Resp. at 92. Defendant fails to cite *any* legal basis for requiring such a release, and the Court should disregard this specious objection.

Similarly, while Defendant characterizes the scope of Request No. 46 as "requir[ing] the production the production of every piece of information in NGSS's possession concerning every single person who was employed in the shipyard at any time during a seven-year period," Defendant conveniently ignores Plaintiffs' express willingness to substantially narrow this request which is recited in its own brief. *See* Def.'s Resp. at 97. As limited, Plaintiffs seek the comparative data identifying the "the number of White employees who have sought

---

[14] They are: Interrogatory Nos. 3, 11, 27, 28, 32, 39, 41, 43, 45, 48, 49, 50. Interrogatory No. 50(d) seeks the position and salary for each individual prior to and after demotion, although Defendant failed to articulate how its objection might apply.

[15] They are: Document Request Nos. 5, 6, 7, 10, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 40, 46, 60, 61, 69, 71.

accommodations and the number of White employees granted accommodations, as well as the number of Black employees who have sought accommodations and the number of Black employees granted accommodations." *See* Def.'s Resp. at 97. Nor do Plaintiffs seek the identity of those employees who have been accommodated. *See* Def.'s Resp. at 97. Under these circumstances, no such medical release is necessary.

Here Defendant is using the medical release as a subterfuge – like its deficient protective order – to withhold relevant, non-privileged documents and information. The Court should order the production of these documents immediately.

## V. DEFENDANT'S OBJECTION CONCERNING PRE-LIMITATIONS PERIOD DISCOVERY IS NOT VALID; RATHER IT IS ABSURD.

Defendant has cited *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 279 (5th Cir. 2004), for the proposition that it is not required to produce information regarding any time before 1997. That position is absurd, and even more confounding in that *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 104 (2002), is cited. *Morgan* establishes in no uncertain terms that (1) with regard to hostile work environment claims, an employer can be liable for pre-limitations conduct as long as one contributing act occurs during the charge-filling period; and (2) with regard to discrimination claims, relevant pre-limitations evidence may be used as *background evidence* in order to establish a current violation. *See id.* at 113 ("Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim"). Thus, the citation of *Pegram* is clearly inapposite, as the case addressed whether there could be a continuing violation in a § 1981 case alleging solely *discrete* violations, and that court determined that under *Morgan* there could not be a claim based on the continuing violation theory. Indeed, Defendant's Response concedes that Plaintiffs made no such claim, and also cites *Morgan*, albeit not the relevant pages. Thus, any fair reading of the controlling authority, including *Morgan*, and even Defendant's Response, directs that the motion should be granted.

## VI. PLAINTIFFS ARE ENTITLED TO BROAD DISCOVERY RELEVANT TO THEIR CLAIM OF HOSTILE WORK ENVIRONMENT HARASSMENT.

Defendant refuses to produce information regarding racist comments, and discriminatory transfers and discipline, for example, based on its opinion that such incidents are either "isolated" or not "actionable" under federal law. *See* Interrogatory Nos. 17, 27, 32, 33, 48, 49. *Morgan*, 536 U.S. at 116, however, re-states the decades-old principle that courts must consider

the "totality of the circumstances." Further, interpretive case law establishes that racially motivated discrimination and retaliation, whether or not ultimately actionable, may constitute the basis for a hostile work environment claim. *See McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1107-08 (9th Cir. 2004). Similarly, there is no requirement that conduct alleged either be superficially "directed" at a plaintiff, or occur precisely within his or her presence. *See* Interrogatory No. 27. Indeed, it is the discriminatory animus that pervades a workplace *environment* that is to be considered; the presence of such animus throughout the entire workplace environment therefore is relevant to Plaintiffs' claims here. *See, e.g., id.* at 1118.

Finally, prior complaints or claims of racial discrimination or harassment, whether lodged by Plaintiffs or others, and investigations thereof, conducted internally or conducted by external agencies, are relevant at a minimum to the affirmative defense asserted by Defendant.[16] Its notice of prior complaints of discrimination and harassment is directly relevant to whether Defendant had effective policies and procedures in place to prevent and remedy harassment, whether Defendant did in fact do so, and whether any individual Plaintiff who may not have availed him or herself of such policies or procedures acted reasonably.[17]

## VII. DEFENDANT'S ASSERTION THAT CERTAIN RESPONSES ARE OTHERWISE COMPLETE IS UNFOUNDED.

### A. Defendant has Failed to Produce Documents Within the Meaning of Rule 34.

Defendant's explicit and implicit suggestion that certain subjects of this Motion constitute a questionable use of this Court's time meets little opposition from Plaintiffs. The necessity of the Motion, however, is unquestionably a direct consequence of Defendant's conduct. Defendant's maintenance of the position that it has no obligation to review the documents it intends to produce and to subsequently actually produce those documents, as Rule

---

[16] *See* Interrogatory Nos. 27, 28, 33; Document Request Nos. 34-38; Answer at 3 (filed on or about May 22, 2003); *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998).

[17] *See generally Faragher*, 524 U.S. at 789 (finding that employer's failure to remedy past harassment may constitute ratification of that harassment); *Yates v. Avco Corp.*, 819 F.2d 630 (6th Cir. 1987) (holding that employer's knowledge of a supervisor's prior sexual misconduct is relevant when determining whether the employer adequately responded to a plaintiff's sexual harassment complaint); *Roberts v. Air Capitol Plating, Inc.*, No. 95-1348-JTM, 1997 WL 446266, *4 (D. Kan. July 22, 1997) ("Defendants state there were no prior complaints of sexual harassment. They assert that any other complaints are not relevant. The court finds the requested information and documents are likely to lead to the discovery of admissible evidence."). Moreover, prior complaints of racial discrimination and harassment are directly relevant to Plaintiffs' claims for punitive damages, as that analysis requires inquiry into whether Defendant acted with "malice or with reckless indifference to the federally protected rights" of Plaintiffs. *See* 42 U.S.C. § 1981(b)(1); *see also Kolstad v. Am. Dental Assoc.*, 527 U.S. 526, 534-35 (1999).

34 requires, is literally incredible.  *See* Def.'s Resp. at 15.[18]  This unwavering exaltation of form over substance finds no justification in any authority, cited or otherwise, and in fact, Plaintiff has provided significant authority – *unanswered by Defendant* – establishing the less-than-novel concept that Defendant is not relieved of its obligation to produce documents simply because it has moved for entry of a protective order.  *See* Pls.' Mem. at 18.[19]

**B.   Certain Other Responses are Simply Incomplete; Defendant's Arguments to the Contrary are a Product of Unfettered Ingenuity.**

Defendant further suggests in its Response that Plaintiffs have unfairly characterized its responses as incomplete.  The characterization, however, is patently fair.  Plaintiffs seek only to obtain complete responses to the requests propounded.  If the requested information or documents do not exist, Plaintiffs only seek a definitive answer stating that to be the case.  Defendant, however, prefers to continue defending clearly incomplete responses,[20] now invoking recitation of alleged agreements or offers it claims to have made that have no foundation in reality.[21]  Defendant's failure to respond fully to the served discovery requests, and its disingenuous excuses for doing so should not be sanctioned by this Court.

## CONCLUSION

For all of the reasons set forth above, Plaintiffs respectfully request that their Motion to Compel be granted.

---

[18] Rule 34(a) of the Federal Rules of Procedure authorizes a party to serve requests to "*inspect and copy*" documents and other things. (emphasis added).  That Defendant might prefer a Rule that authorizes it simply to allow inspection, but not the concomitant copying of documents is of no consequence.  The paucity of cited authority for Defendant's novel proposition belies its artful dodge.  Moreover, Defendant's reliance upon the oft-repeated experience of its lead counsel and its concerns for administrative convenience are hardly dispositive of this matter.  Entry of such orders should be far from a routine matter.  *See Ramirez v. General Motors Corp.*, No. L98-122, 1999 WL 1336087, *2 (S.D. Tex. Dec. 10, 1999) ("Judges must guard against any notion that the issuance of protective orders is routine, let alone automatic, even when the application is supported by all parties . . . the court is faced with an essentially non-adversarial situation and must assume the duty of making an independent inquiry." (quoting *Confidentiality, Protective Orders, and Public Access to the Courts,* 105 Harv. L. Rev. 427, 492, 492 n. 322 (1991))).  Moreover, as Plaintiffs have previously made clear, Defendant bears a significant burden to demonstrate the propriety of entry of such an order – a burden it made no attempt to meet.  *See* Pls.' Mem. at 15-18.

[19] Indeed, Plaintiff was forced to move to compel a number of responses (to at least 14 interrogatories and 37 requests for production, if not more) in which the *only* or *primary* issue in controversy is Defendant's outright refusal to produce documents.  *See, e.g.*, Interrogatory Response Nos. 3, 4, 9, 15, 19, 20, 24, 25, 29, 31, 37, 39, 42, 44; Document Request Response Nos. 3, 10-13, 15, 19, 22-29, 32, 33, 47-49, 53-59, 63-67, 70-72, 79, 80.

[20] *See, e.g.*, Interrogatory Nos. 2 (seeking description of maintenance of *all* records, not simply compensation records); 5-8 (response fails to answer interrogatory parts with regard to represented positions); 16 (response misconstrues request as seeking information about *hiring*); 26 (response and counsel's representations do not fully respond to each interrogatory part); Requests for Production 32-33 (seeking information broader than EEO-1 reports); 48-49 (responses reference No. 47; however, each of the three requests seek distinct categories of documents); 65 (identified documents do not respond to all parts of request).

[21] *See* Supp. McNeill Decl. ¶¶ 4-16, Exh. A.

REBUTTAL MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL                                                                15
CIVIL ACTION NO:  1:01CV-111-LG-RHW

Dated:  May 2, 2005       Respectfully submitted,

              SANDRA JARIBU HILL, Esq.
              Mississippi Workers Center for
                Human Rights


              WILLIAM C. McNEILL, III, Esq.
              SHELLEY A. GREGORY, Esq.
              The Legal Aid Society
                Employment Law Center


              Counsel for Plaintiffs



           By:  _s/William C. McNeill, III_
               WILLIAM C. MCNEILL, III


William C. McNeill, III, Esq., MS Bar No. 42867, *Pro Hac Vice*
Shelley A. Gregory, MS Bar No. 43443, *Pro Hac Vice*
The Legal Aid Society – Employment Law Center
600 Harrison Street, Suite 120
San Francisco, California  94107
(415) 864-8848

Sandra Jaribu Hill, Esq., MS Bar No. 10684
Mississippi Workers Center for Human Rights
213 Main Street
P.O. Box 1223
Greenville, Mississippi  38702-1223
(662) 334-1122

**CERTIFICATE OF SERVICE**

I hereby certify that on <u>May 2, 2005</u>, I electronically filed the foregoing with the Clerk of the Court using the ECF System which sent notification of such filing to the following:  Paul B. Eason; Kathryn R. Gilchrist.

I hereby certify that I have mailed by United States Postal Service the documents to the following non-ECF participants:

Autrey E. Barney
517 Cherry Avenue
Jackson, AL  36545

Benjamin Coleman
2712 Calle Hermosa
Gautier, MS 39553

Bennie Coleman
1412 Rue De Courmont
Gautier, MS 39553

Renarda Hayes
P.O. Box 832
Grand Bay, AL 36541

Joe Kirkland
5807 Frederick St.
Moss Point, MS 39563

Tammi Liddell
3836 Prentiss St.
Moss Point, MS  39563

Macie McMillan
4006 Wask Dr.
Moss Point, MS  39563

Daisan Nettles
4012 Prentiss Ave.
Moss Point, Ms 39563

Willie B. Richmond
1608 Timberlane Road

Gautier, MS  39553

Brian Thompson
221 Eisenhower Drive, #138
Gulfport, MS  39531

Edna M. Tubbs
P.O. Box 501
Escatawpa, MS  39552

                                                                  __s/Laurel Kapros____
                                                                  Laurel Kapros